UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| SHELTON BROTHERS INC., <br><br> Plaintiff <br><br> vs. <br><br> TRI-VALLEY BEVERAGE, INC., <br> T. J. SHEEHAN DISTRIBUTING, INC., <br> UNION BEER DISTRIBUTORS LLC, and <br> CRAFT BEER GUILD DISTRIBUTING OF <br> NEW YORK LLC, <br><br> Defendants. | Civil Action No. 6:14-CV-1168 (GLS/ATB) |

## COMPLAINT AND REQUEST FOR DECLARATORY JUDGEMENT

### INTRODUCTION

1. Plaintiff Shelton Brothers Inc. ("Shelton Brothers") brings this action for declaratory judgment pursuant to 28 U.S.C. §2201, *et seq.*, to obtain a judicial declaration that Shelton Brothers, a supplier of craft beers and other alcoholic beverage products:

(a) Is not prohibited by any distribution agreement from terminating at will its commercial relationship with any of the Defendants, beer distributors licensed to operate in the State of New York, to whom it has previously sold beer;

(b) Is not prohibited by agreement from selling beer to another beer distributor licensed to operate in the same territories in the State of New York in which the Defendants, respectively operate; and

1

(c) Is not bound by agreement to enter into a relationship with Defendant Craft Beer Guild Distributing of New York LLC, a beer distributor licensed to operate in the State of New York to whom it has not previously sold beer.

## PARTIES

2. Plaintiff Shelton Brothers is incorporated under the laws of the Commonwealth of Massachusetts, with a principal place of business at 205 Ware Road, Belchertown, Massachusetts.

3. Defendant Tri-Valley Beverage, Inc. ("Tri-Valley") is incorporated in the State of New York, with a principal place of business at 4925 State Route 233, Westmoreland, New York.

4. Defendant T. J. Sheehan Distributing, Inc. ("T. J. Sheehan") is incorporated in the State of New York, with a principal place of business at 225 Commerce Boulevard, Liverpool, New York.

5. Defendant Union Beer Distributors LLC ("Union Beer") is incorporated in the State of New York, with a principal place of business at 1213 Grand Street, Brooklyn, New York.

6. Defendant Craft Beer Guild Distributing of New York, LLC ("Craft") is incorporated in the State of New York, with a principal place of business in Ulster County.

7. Defendant T. J. Sheehan identified an address in New York, New York, care of C T Corporation System, for service of process in their filings at the New York State Department of State.

8. Defendants Union Beer and Craft identified an address in Kingston Massachusetts, care of L. Knife & Sons, Inc., for service of process in their filings at the New York State Department of State.

9. The Defendants are all licensed to distribute beer in various territories in the State of New York.

10. On information and belief, Tri-Valley, T. J. Sheehan, Union Beer, and Craft, are linked by ownership, management, and operation, and together currently operate as beer distributors in every county in the State of New York.

11. On information and belief, the Defendants (herein referred to collectively as "the New York L. Knife Companies") are affiliated by virtue of common ownership or management with distribution companies in at least twenty other states, each of which is owned or controlled in some degree by a parent company, L. Knife & Sons, Inc. ("L. Knife"), located in Massachusetts.

12. The Defendants and their affiliated companies in other states are referred to on their common website (www.greatbrewers.com) as "the L. Knife Companies."

## JURISDICTION AND VENUE

13. This is an action for declaratory judgment pursuant to the Declaratory Judgment Act, 28 U.S.C. §2201(a), for the purpose of determining a question of actual controversy between the parties.

14. This Court has jurisdiction over this action pursuant to 28 U.S.C. §1332 because there is complete diversity of citizenship between the parties and the amount in controversy exceeds $75,000.00, exclusive of interest and costs.

15. Venue is proper in this Court pursuant to 28 U.S.C. §1391(b)(2). Although Shelton Brothers is a resident of Massachusetts, and a substantial part of the events giving rise to the claim occurred in Massachusetts, the Defendants are all established and located in the State of New York.

16. Plaintiff hereby demands a trial by jury of all issues in this matter.

## FACTUAL ALLEGATIONS AND THE DISPUTE BETWEEN THE PARTIES

## BACKGROUND

17. Shelton Brothers is an importer, exporter, wholesaler, and master distributor of foreign and domestic beer and cider that currently holds federal Basic Permits as an importer and a wholesaler of beer and other alcoholic beverages at its addresses in the Commonwealth of Massachusetts and in the State of Connecticut, and as a wholesaler in the State of Florida and the State of Missouri.

18. Shelton Brothers is not licensed in the State of New York in any capacity, does not currently purchase or sell beer, cider, or other products in the State of New York, and its activities are accordingly not regulated in any way in the State of New York.

19. Each of the Defendants is licensed by the State of New York as a wholesale importing distributor of malt liquor, or beer.

20. Shelton Brothers has sold beer to numerous New York-licensed importing wholesale distributors since approximately 1997.

21. Shelton Brothers began selling beer in the State of New York to some of the Defendants in 2008, 2009, and 2010.

22. Shelton Brothers has never had any written agreement with a New York-licensed distributor setting forth the terms of the parties' commercial relationship.

23. Shelton Brothers has never had a signed contract or agreement with any of the Defendants in the State of New York for the distribution of beer.

24. On information and belief, the New York L. Knife Companies, and all L. Knife Companies, normally require would-be suppliers of craft beer to sign a standard distribution agreement such as that proffered to Shelton Brothers in the State of New York ("the L. Knife

Agreement") whenever they have received consent or authorization to distribute a supplier's brands. The Agreement allows the distributor to terminate the relationship at will, but places strict limitations on the supplier's ability to terminate.

25. On information and belief, the L. Knife Agreement is substantially the same in the various states where the L. Knife Companies operate, though perhaps with modifications to reflect local state laws in some instances.

26. Each of the New York-licensed beer distributors to whom Shelton Brothers has sold beer, including the New York L. Knife Companies, has placed orders with Shelton Brothers in Massachusetts, collected and taken possession of goods at warehouses operated by Shelton Brothers in other states (not including the State of New York), transported the goods into the State of New York for sale to other wholesalers or retailers, and sent payment to Shelton Brothers in Massachusetts.

27. A New York-licensed beer distributor is legally allowed to transport into the state and sell any particular brand of beer to retailers in the state only after that wholesale distributor (or any other wholesale distributor licensed in the state) has registered that brand for sale with the New York State Liquor Authority. The wholesale distributor registering a brand of beer must provide written authorization from the out-of-state supplier to register that specific brand.

28. In or about 2005, Union Beer approached Shelton Brothers about distribution of its beers, which were not at that time being distributed in New York City, and Daniel Shelton, president of Shelton Brothers, met with various management personnel at Union Beer's office in Brooklyn. He tentatively agreed that Shelton Brothers would sell its beers to Defendant Union Beer for distribution in New York City.

5

29. Defendant Union Beer provided an extensive agreement – a version of the L. Knife Agreement – for Mr. Shelton's signature. The Agreement would have placed strict limitations on Shelton Brothers' ability to terminate the relationship in the event that it was unsatisfied with Union Beer's performance, would have prohibited the sale of beer or other products to any other distributors in the assigned "territory" specified in the agreement, and included numerous other provisions that Mr. Shelton considered one-sided and unfair in favor of Union Beer. Mr. Shelton informed Union Beer that Shelton Brothers would not sell any products to Union Beer under such an agreement, and ceased discussions with Union Beer.

30. On information and belief, in 2008, Tri-Valley and T. J. Sheehan separately agreed to purchase the assets of a small craft beer distributor and retail store, A Beer Lover's Paradise, operating in numerous counties in Upstate New York.

31. At the time of these purchase agreements, Shelton Brothers was selling beer to A Beer Lover's Paradise, and to no other wholesale distributors in Upstate New York.

32. Shelton Brothers never sought or received any compensation for allowing A Beer Lover's Paradise to distribute Shelton Brothers' beers for profit in the State of New York.

33. Shelton Brothers never signed or was asked to sign any written authorization or agreement with A Beer Lover's Paradise, and the parties had no oral agreement regarding the terms of the relationship or its geographical scope.

34. Tri-Valley and T. J. Sheehan, through their officers or representatives residing in Massachusetts, asked Daniel Shelton of Shelton Brothers to consent to an assumption by Tri-Valley and T. J. Sheehan of any "distribution rights" in Shelton Brothers' products that A Beer Lover's Paradise might have in the various New York counties that the two distribution

6

companies covered, respectively, and to sign substantially the same L. Knife Agreement that Union Beer had proffered, and Mr. Shelton had rejected, approximately three years earlier.

35. Mr. Shelton refused to sign the standard agreement proffered, objecting in particular, again, to the provisions that would limit or prohibit Shelton Brothers from ending its relationship with Tri-Valley and T. J. Sheehan once it began, and accordingly refused to consent to accept Tri-Valley and T. J. Sheehan as its distributors.

36. Discussions between Mr. Shelton and representatives of Tri-Valley and T. J. Sheehan located in Massachusetts – primarily Gerald Sheehan, who is described in corporate documents as the Chief Executive Officer of T. J. Sheehan, and Tim Sheehan, who is on information and belief the "T. J. Sheehan" for whom that company is named – followed. Mr. Shelton reiterated his refusal to accept the L. Knife Agreement, and insisted that he would only sell beer to any New York L. Knife Companies on an at-will basis by which Shelton Brothers could end the relationship at any time if it was not satisfied with their performance, or if the L. Knife Agreement were modified to include rigid sales quotas and other changes making it more fair to Shelton Brothers.

37. The Defendants refused to alter the L. Knife Agreement, but informed Mr. Shelton verbally that in exchange for his consent on behalf of Shelton Brothers, Tri-Valley and T. J. Sheehan would require no agreement, but only a letter of consent from Shelton Brothers.

38. A short letter was sent in draft form to Mr. Shelton in which he consented and approved on behalf of Shelton Brothers to the transfer of any "rights" to distribute Shelton Brothers' beers then possessed by A Beer Lover's Paradise, and appointed Tri-Valley and T. J. Sheehan its distributors in place of A Beer Lover's Paradise (See Exhibit "A").

39. Tri-Valley and T. J. Sheehan did not offer, and Shelton Brothers did not seek, any compensation in exchange for Shelton Brothers' consent to their assuming distribution in place of A Beer Lover's Paradise in specified counties of the State of New York.

40. Shelton Brothers only agreed to sell products to Tri-Valley and T. J. Sheehan upon the representation by their representatives – and Shelton Brothers' understanding – that Shelton Brothers' right and ability to end its relationship with them at any time would not be limited or restricted by its written letter of consent and appointment.

41. On or about December 8, 2008, Shelton Brothers began selling products to T. J. Sheehan, and considerably later, in 2010, first sold products to Tri-Valley.

42. Over the course of the parties' dealings, which continued into 2012, but ended prior to 2013, Tri-Valley and T. J. Sheehan from time to time ordered small quantities of the brands that had been carried by A Beer Lover's Paradise, and other brands that were later added to the price and product list available on Shelton Brothers' website – most of which additional products were never registered for sale in the State of New York.

43. Meanwhile, in February, 2009, approximately, Shelton Brothers verbally consented to allow Defendant Union Beer to act as its distributor in the New York City area and other counties in which Union Beer was active for any brands that the previous distributor had sold, and such other brands included on Shelton Brothers' growing price and product list as Union Beer might choose to order.

44. Union Beer began purchasing beer for sale in the State of New York from Shelton Brothers in Massachusetts without any written or oral agreement regarding the terms of their commercial relationship.

**THE PRESENT CONTROVERSY**

45. Tri-Valley, T. J. Sheehan, and Union Beer ordered product irregularly over the course of their relationship with Shelton Brothers.

46. Shelton Brothers, increasingly dissatisfied with the performance of all the New York L. Knife Companies, first informed Tri-Valley (which had been purchasing negligible quantities of only a few Shelton Brothers products) in 2012 that it would no longer sell any of its products to Tri-Valley. Shelton Brothers received no response, and no further orders from Tri-Valley.

47. Also in 2012, Shelton Brothers informed Union Beer that it would not sell additional brands that Shelton Brothers had recently begun to carry to Union Beer.

48. Shelton Brothers instead chose to sell brands of beer that had not been sold previously in New York to Twelve Percent Imports (an independent distributor licensed to distribute beer in the State of New York). Although Shelton Brothers wished to have Twelve Percent Imports assume distribution of all of its products in New York City, Twelve Percent Imports declined to do so in considerable part because, on information and belief, it expected and feared harassment and a possible nuisance lawsuit from Union Beer, which has vastly superior financial and legal resources and a reputation for using those resources to intimidate its smaller suppliers and competitor distributors.

49. On January 11, 2013, Shelton Brothers received a letter from Christopher Sheehan – on behalf of an entity called "U.B. Distributors, Inc.," but on Union Beer Distributors letterhead – announcing the formation of Craft (a new entity formed by L. Knife for the purpose of distributing craft beer in the State of New York) and informing Shelton Brothers, confusingly, that:

>Craft New York will sell to and service retail customers [sic] the eastern part of New York that are currently being service [sic] by Tri Valley Beverage and UB Distributors ('Union Beer'). . . .
>
>Pursuant to the terms of the distribution agreement between your company and T.J. Sheehan Distributing, Inc. and Tri-Valley Beverages, Inc. dated as of May 14, 2008 and May 14, 2008, respectively, we are notifying you of our intent to assign the distribution agreement for certain territories to Craft New York.

50.     Mr. Sheehan further requested that Shelton Brothers notify a representative of L. Knife & Sons by e-mail of any objections Shelton Brothers might have to the intended "assignment."

51.     On February 1, 2013, Daniel Shelton of Shelton Brothers responded to Mr. Sheehan's letter by e-mail, as requested, to L. Knife, stating as follows:

>The scanned and attached letter from Chris Sheehan was received in our office around the 12th of January.
>
>It appears to be a generalized form letter referring to a standard form agreement that I do not believe exists between Shelton Brothers and any of the other parties mentioned in the letter.  Leaving any contractual issues aside, however, and without raising again our concerns regarding the performance of any of the entities involved here as regards the distribution of our beers or "products," I am writing to inform you that we do not approve or consent to the proposed assignment of any distribution agreement that might exist at this time.  Further, we do not wish to have a distribution agreement with Craft New York.
>
>We understand that the existing distribution companies, T. J. Sheehan and Tri-Valley, have already ceased, or will hereafter cease, to order and sell products carried by Shelton Brothers.

52.     Shelton Brothers received no response from Ms. Porter, Mr. Sheehan, or anyone at any of the New York L. Knife Companies or L. Knife.

53.     Shortly after Mr. Shelton's communication of February 1, an employee of Shelton Brothers contacted a representative of T. J. Sheehan to confirm that Shelton Brothers would no longer sell beer or other products to T. J. Sheehan.

54. In or about March, 2013, Shelton Brothers received information from the manager of a bar in western New York that a salesperson employed by T. J. Sheehan had exclaimed loudly on the premises that the New York L. Knife Companies would not act against Shelton Brothers as long as Shelton Brothers did not sell any beer in Upstate New York, but that if Shelton Brothers sold beer to any distributor other than one of the New York L. Knife Companies, "we'll sue their asses."

55. On information and belief the Defendants will employ non-meritorious legal action, and other "hard ball" tactics, against any distributor who agrees to distribute product from the Shelton Brothers.

56. Shelton Brothers has not sold any beer to any distributor operating in Upstate New York since February, 2013.

57. On information and belief, Tri-Valley and T. J. Sheehan have not protested or objected to Shelton Brothers' decision to stop selling beer to each of them (but have threatened legal action against any other distributor that might distribute them).

58. In February, 2013, after Shelton Brothers had begun selling to another distributor small quantities of certain brands of beer that the New York L. Knife Companies had never ordered and sold, a representative of Union Beer/Craft, wrote to Daniel Shelton by e-mail that a number of matters involving L. Knife companies were "coming to a head."

59. After a telephone conversation in March, 2013, it was clear that an agreement between Shelton Brothers and the Defendants that would satisfactorily resolve Shelton Brothers' complaints about the Defendants' methods and sales performance was not possible.

60. Shelton Brothers now desires to form its own distribution company in State of New York for the purpose of sub-distributing Shelton Brothers' products to other New York-licensed

distributors, and in the interim to resume selling its products in the entire State of New York through any licensed distributors it chooses.

61. On information and belief, the Defendants hold the position that:

(a) Despite the lack of a written agreement with Tri-Valley and T. J. Sheehan restricting Shelton Brothers' right and ability to terminate at will its relationship with either; Shelton Brothers' express refusal to have such an agreement prior to the commencement of its business relationship with them; Shelton Brothers' express refusal of consent to any transfer of an alleged "agreement" with Tri-Valley and T. J. Sheehan to Craft; and Shelton Brothers' express refusal to sell beer to any of them for more than a year-and-a-half, Tri-Valley, T. J. Sheehan, and Craft possess distribution rights in Shelton Brothers' all of Shelton beers – by virtue of an alleged written agreement of the parties that would prevent any other distributor from selling Shelton Brothers' beers in the territories originally assigned to Tri-Valley and T. J. Sheehan;

(b) Despite the lack of any agreement between the parties, and Union Beer's failure even to request Shelton Brothers' consent to a transfer to Craft, Shelton Brothers is contractually restricted from selling beer to any distributor other than Craft in the territories outside of New York City that were formerly covered by Union Beer; and

(c) Despite the lack of any agreement (written or otherwise) that Union Beer would have an exclusive right to sell in any of the territories it covered in 2009, when it began selling Shelton Brothers beers, Shelton Brothers cannot sell its beers to any other distributor in those territories.

62. Shelton Brothers therefore seeks herein a judicial declaration that it has no contractual obligations that would require it to sell beer to the Defendants, and that no purported agreement with any of the Defendants would prevent it from selling beer to any other New York-licensed

distributor in any county of the State of New York, or require Shelton Brothers or any other New York-licensed distributor to compensate the New York L. Knife Companies for so doing.

## AS AND FOR A FIRST CAUSE OF ACTION
### Declaratory Relief

63. Shelton Brothers re-alleges the allegations of paragraphs 1 through 62 of the Complaint as though fully set forth herein.

64. An actual controversy presently exists: (a) between Shelton Brothers and the Defendants, respectively, as to whether any written agreement restricts Shelton Brothers' right or ability to cease selling product to either of them and sell instead to another New York-licensed beer distributor serving in some of the same territories; (b) between Shelton Brothers and Union Beer as to Shelton Brothers' right or ability to continue selling certain brands of beer to Union Beer and sell them also to another New York beer distributor operating in the same territory; and (c) between Shelton Brothers and the New York L. Knife Companies as to whether Shelton Brothers is required to sell beer to Craft for distribution in any territory formerly served by the other New York L. Knife Companies.

65. The controversy is of sufficient immediacy and magnitude to justify the issuance of a declaratory judgment.

66. The issuance of declaratory relief by this Court will terminate some or all of the existing controversy between the parties.

67. The letters of consent that Shelton Brothers provided separately to Tri-Valley and T. J. Sheehan did not form a legally binding document which imposes any obligation on either the Plaintiff or the Defendants.

68. Therefore, Shelton Brothers is entitled to a declaration that: (a) it has effectively and properly terminated its relationship with the Tri-Valley and T. J. Sheehan under any alleged agreements; (b) Shelton Brothers is not prohibited by any such alleged agreement from commencing a commercial relationship with another New York distributor in the territories formerly served by Tri-Valley and T. J. Sheehan, or currently served by Union; and (c) Shelton Brothers has no obligation under any alleged agreement to sell beer to Craft for distribution in the State of New York.

## RELIEF REQUESTED

WHEREFORE, Plaintiff respectfully requests that the Court enter a judgment in its favor as follows:

A. Declaring that there is no valid contract or agreement between Shelton Brothers and the Defendants that would require Shelton Brothers to continue selling, or to resume selling, beer to any of the Defendants for distribution in the State of New York.

B. Declaring that Shelton Brothers is not subject to any restriction on its ability to enter into a relationship with a distributor of its choosing in the State of New York.

C. Granting such additional declaratory or other relief as the Court deems proper and just.

Respectfully submitted,
SHELTON BROTHERS INC.
By Its Attorneys

/S/   Ryan T. Donovan

Ryan T. Donovan
Bar Roll No.: 105803
RTDonovan@capitalregionlaw.com
HARRIS, CONWAY & DONOVAN, PLLC
Five Clinton Square
Albany, New York 12207
Phone: (518) 436-1661
Fax: (518) 432-1996